count, where the debtor himself had made no application.

I have had occasion to consider this point in the case of Postmaster General v. Furber, (Me.) 1827, and to the opinion there given I deliberately adhere.[3]

My judgment is, that, as the credits carried into the general account of Bourne, for disbursements since the second bond was given, far exceed those due by him to the United States, the parties to the first bond are discharged from any responsibility thereon. The bill must therefore be dismissed. Bill dismissed accordingly.

## Case No. 16,641.

### UNITED STATES v. WARE.

[2 Cranch, C. C. 477.] [1]

Circuit Court, District of Columbia, May Term, 1824.

JURORS—CHALLENGES IN CAPITAL CASES—QUAKERS.

It is good cause of challenge, in a capital case, that the juror is a Quaker, and has conscientious scruples as to the lawfulness of taking away human life for any offence.

Betsey Ware, a free colored woman, was indicted for burglary in the dwelling house of E. J. Lee, Esq. Two of the jurors, W. Stabler and George S. Hough, when called to be affirmed, stated in open court that they were of the Society of Friends, and had scruples of conscience in regard to the lawfulness of capital punishment; and did not,

instructing the jury, that if they believed, that the supervisor had made the election and promise, as stated in Hughes's deposition, it was a declaration of his election, how the payments of Arthur should be applied, and that whether a formal entry was accordingly made of such appropriation or not, in his books, the jury ought to consider such appropriation as made.

Now this opinion of the circuit court embraces two points: (1) That the supervisor had a right after such payments upon general account, to make a special application of them to the first bond; (2) that his promise to Hughes was an election to make such special application, and amounted without any further act done to an actual application according to his promise. The decision of the supreme court negatives both propositions, and goes no farther. The language of the judge must be construed with reference to them. There is no record of the form of the judgment of reversal, or mandate in this case. In U. S. v. Nicoll, 12 Wheat. [25 U. S.] 505, 511, this case of U. S. v. January, 7 Cranch [11 U. S.] 572, was referred to by the court in its opinion, as in point to show, that as to credits after a second bond given, it was at the election of the government to apply them to either account. This is doubtless true, where the debtor makes no other application at the time of the payments or credits. But if the government carry them to general account, it is presumed, that it was not intended to say, that they could afterwards be altered to a special account, by the government, so as to affect sureties.

[3] [In truth the same point was substantially decided by the supreme court in the case of U. S. v. Kirkpatrick, 9 Wheat. [22 U. S.] 720, and further discussion of it would seem to be unnecessary.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

in their conscience, think it lawful to take the life of a human being.

Mr. Hewitt, for the prisoner, objected that the jurors could not challenge themselves.

Mr. Taylor, for the United States (in the absence of the district attorney) then challenged them for cause, alleging that they did not stand indifferent.

THE COURT said it was a good cause of challenge, and the jurors were set aside.

## Case No. 16,642.

### UNITED STATES v. WARNER.

[4 Cranch, C. C. 342.] [1]

Circuit Court, District of Columbia. Nov. Term, 1833.

CRIMINAL LAW — EVIDENCE OF BAD CHARACTER.

Upon an indictment for keeping a disorderly house, and for keeping a bawdy house, the United States cannot give evidence of the general character of the defendant.

The indictment [against Eliza Warner] had two counts: (1) For keeping a bawdy house. (2) For keeping a disorderly house.

Mr. Dunlop, for the United States, offered evidence of the general character of the defendant.

Mr. Z. C. Lee, for defendant, objected, and relied on the decision of this court in U. S. v. Jourdine [Case No. 15,499], at the September special court, 1833.

Mr. Dunlop, contra, cited 1 Hawk. P. C. c. 74.

THE COURT (MORSELL, Circuit Judge, contra) refused to permit the evidence to be given.

Verdict, not guilty.

## Case No. 16,643.

### UNITED STATES v. WARNER et al.

[4 McLean, 463; [2] 6 West. Law J. 255.]

Circuit Court, D. Ohio. Nov., 1848.

CONSTRUCTION OF STATUTES—NEGLIGENT NAVIGATION OF STEAMBOAT—MANSLAUGHTER—INDICTMENT—EVIDENCE—DUTY OF CAPTAIN.

1. In the construction of statutes, it is a rule of universal application, that effect must be given to the words used by the legislature, when there is no uncertainty or ambiguity in their meaning.

[Cited in Cross v. Seeberger, 30 Fed. 428.]
[Cited in brief in Cutler v. Currier, 54 Me. 88; Brackett v. Ridlon, Id. 430. Cited in Corsey v. Territory (N. M.) 32 Pac. 506; Buffham v. City of Racine, 26 Wis. 453.]

2. Congress having expressly provided in section 12, Act July 7, 1838 [5 Stat. 306], that any act of "misconduct, negligence, or inattention" on the part of those concerned in the steamboat navigation, producing death as a result, shall be deemed manslaughter, it is not necessary to aver, in an indictment framed upon it, or to prove on trial, a malicious intent in the persons charged—such intent not being made a necessary ingredient of the offense.

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. John McLean, Circuit Justice.]